UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JAZMIN GOODSON,

        Plaintiff,

       v.                                         **DECISION AND ORDER**
                                                                18-CV-6243S

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____

      1.      Plaintiff Jazmin Goodson brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her application for supplemental security income ("SSI") under Title XVI of the Act. (Docket No. 1). This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.      Plaintiff protectively filed her application for SSI with the Social Security Administration on May 7, 2014. (R.[1] at 15, 163, 495). Plaintiff alleged disability beginning on May 1, 1998, due to a learning disability, attention deficit hyperactivity disorder ("ADHD"), short attention span, distracted easily, neurofibromatosis, pain in knees, tumor in left eye, optic nerve glioma, tumor on brain, brain lesions, and menorrhagia. (R. at 163-167). Plaintiff's application was denied (R. at 81), and Plaintiff thereafter requested a hearing before an administrative law judge ("ALJ") (R. at 96).

      3.      On September 14, 2016, ALJ Connor O'Brien held a hearing at which Plaintiff—represented by counsel—and Vocational Expert Dawn Blythe appeared and

---

[1] Citations to the underlying administrative record are designated as "R."

testified. (R. at 491-536). At the time of the hearing, Plaintiff was 23 years old (R. at 151), with an 11th grade education and no past work experience. (R. at 168, 528).

4. The ALJ considered the case *de novo* and, on March 24, 2017, issued a written decision denying Plaintiff's application for benefits. (R. at 15-27). On January 24, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (R. at 1-5). Plaintiff filed the current action, challenging the Commissioner's final decision,[2] on March 23, 2018. (Docket No. 1).

5. Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Docket Nos. 13, 19). Plaintiff filed a response on May 21, 2019 (Docket No. 20), at which time this Court took the motions under advisement without oral argument. For the reasons that follow, Plaintiff's motion is denied and Defendant's motion is granted.

6. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842, 852 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the

---

[2] The ALJ's March 24, 2017 decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

2

Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119, 126-127 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If [s]he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits [her] physical

or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform [her] past work. Finally, if the claimant is unable to perform [her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66, 70 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 7, 2014, the application date. (R. at 17). At step two, the ALJ found that Plaintiff has the following severe impairments: ADHD, cognitive

4

impairment/developmental delay, neurofibromatosis with tumor growth, left knee impairment, right hand impairment, and optic nerve glioma.  Id.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 18).

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain exceptions:

> [Plaintiff] requires a sit/stand option that allows her to change position every 60 minutes for up to 5 minutes.  She cannot balance on a narrow, slippery or moving surface, and cannot kneel or crawl.  She needs to avoid hazards, such as open waters and unprotected heights.  She can tolerate moderate noise, such as an office, light traffic or grocery.  She needs to avoid anything more than occasional outdoor or bright lights, anything brighter than an office or a grocery.  [Plaintiff] requires up to three additional short, less-than-5-minute, unscheduled breaks beyond normal scheduled breaks.  She can adjust to occasional changes in the work setting.  She can perform simple, unskilled, rote work.  She can work to meet daily goals, but not maintain an hourly, machine[-]driven, assembly line production rate.  She can occasionally interact with the public, but she cannot perform teamwork.

(R. at 20).

13. At step four, the ALJ found Plaintiff does not have past relevant work.  (R. at 25).  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 25-26).  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 26-27).

14. Plaintiff argues that the Commissioner's denial of benefits is not supported by substantial evidence because (1) the ALJ failed to properly evaluate the opinion of a treating physician; and (2) the ALJ failed to properly evaluate Plaintiff's subjective

5

statements. (Docket No. 13 at 12-30). For the reasons that follow, these arguments are unavailing.

15. Plaintiff first contends that the ALJ improperly evaluated the opinion of treating physician, Dr. Joy Burke, and instead relied on his own lay opinion in determining Plaintiff's RFC. Id. at 12-25.

16. In general, the "opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999); see also Burgess v. Astrue, 537 F.3d 117, 128 (2d Cir. 2008); 20 C.F.R. § 404.1527. "However, the ALJ may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence." Smith v. Berryhill, 740 Fed. Appx. 721, 724, (2d Cir. 2018) (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999)) see also 20 C.F.R. § 404.1527(c)(2). Furthermore, "[a] physician's opinions are given less weight when his opinions are internally inconsistent." Micheli v. Astrue, 501 F. App'x 26, 28 (2d Cir. 2012) (summary order); see also Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004).

17. The ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." Matta v. Astrue, 508 Fed. App'x 53, 56 (2d Cir. 2013) (summary order); see also 20 C.F.R. § 404.1545(a)(3) ("[The ALJ] will assess your residual functional capacity based on all of the relevant medical and other evidence"). In doing so, "[t]he [ALJ] is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983). "A lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute

substantial evidence supporting a denial of benefits." Barry v. Colvin, 606 Fed. Appx. 621, 622, (2d Cir. 2015) (summary order) (citing Talavera v. Astrue, 697 F.3d 145, 153 (2d Cir. 2012)).

18.  At issue here is a medical source statement form completed by Dr. Burke on September 28, 2016. (R. at 450-54). Dr. Burke noted that Plaintiff's "main limitation would be cognitive: attention and processing" (R. at 452) and opined that Plaintiff was unable to work because of "cognitive impairment/developmental delay." (R. at 451). However, Dr. Burke also opined that Plaintiff's "cognitive limitations would require her to work at a simple job with minimal stress." (R. at 454).

19.  Dr. Burke further opined that Plaintiff had no significant limitations with reaching, handling or fingering, but also that she can use her hands to grasp, turn or twist objects only 25% of the time, can use her fingers for fine manipulations only 25% of the time, and can use her arms for reaching only 25% of the time. (R. at 454). Below that, Dr. Burke wrote "physical limitations are minimal." Id.

20.  The form also indicates that Plaintiff can sit for 90+ minutes before needing to get up, can stand for 30 minutes before needing to sit or walk around, and would need a job that permits shifting positions at will from sitting, standing or walking. Id. Dr. Burke used a checkmark to indicate that Plaintiff would be "off task" more than 30% of the time but would never be absent due to her impairments. (R. at 452).

21.  The ALJ considered Dr. Burke's opinion, and afforded it some weight. The ALJ explained that although Dr. Burke is a treating source, she treated Plaintiff only "twice over the past three months" and the opinion is "internally inconsistent," "conclusory," and unsupported by the record. (R. at 24, 451).

7

22. Plaintiff alleges these "are not good reasons" to afford "less than controlling weight" to Dr. Burke's opinion and further claims it "is a stretch of reasonableness to accept the inconsistencies identified by the ALJ as actual inconsistencies." (Docket No. 13 at 14-15). This argument fails.

23. In one form, Dr. Burke opined both that Plaintiff is unable to work, and that she would require "a simple job with minimal stress." (R. at 451-454). The same document also indicates that Plaintiff's "physical limitations are minimal" however she is able to use her hands, fingers, and arms only 25% of the time. Id. The form also indicates that Dr. Burke believed that Plaintiff has been limited as described since at least May of 2014, and yet Dr. Burke met with Plaintiff for only "2 appointments over 3 months." Id.

24. At both appointments, on April 6, 2016, and again on July 6, 2016, Dr. Burke performed a mental status examination that revealed that Plaintiff "can follow multiple step commands" and has "good attention, concentration and fund of knowledge." (R. at 372, 441). Notes from these appointments also indicate that Plaintiff complained of pain and swelling in the left hand and left knee, but Plaintiff averred that neither impairment "limit[s] her functionally." (R. at 369, 439).

25. This Court finds no error in the ALJ's assessment of Dr. Burke's opinion, which was internally inconsistent, based on only two meetings with Plaintiff, and contradicted by Dr. Burke's own treatment notes. See Atwater v. Astrue, 512 F. App'x 67, 70 (2d Cir. 2013) (The ALJ is not required to provide a "slavish recitation of each and every factor [provided in the treating physician rule] where the ALJ's reasoning and adherence to the regulation are clear.")

26. Plaintiff claims that after discounting Dr. Burke's opinion, the ALJ relied solely on his lay interpretation of the treatment notes to formulate the RFC finding. (Docket No. 13 at 22). This is a distortion of the ALJ's decision.

27. The ALJ did not grant Dr. Burke's opinion controlling weight for the above good reasons but did afford it "some weight." (R. at 24). The ALJ noted that Dr. Burke's opinion that Plaintiff be limited "to simple jobs with minimal stress is generally consistent with the treatment notes" and that the record of Plaintiff's complaints of knee pain supports the imposition of exertional and nonexertional postural limitations. Id.

28. The record provides substantial evidence to support these RFC limitations and Plaintiff has not demonstrated that she is incapable of performing activities at this level. See Smith v. Berryhill, 740 F. App'x 721, 726 (2d Cir. 2018) (affirming the ALJ's denial of benefits where "[Plaintiff] had a duty to prove a more restrictive RFC, and failed to do so."); 42 U.S.C. §423(d)(5). Thus, this Court finds no error in the ALJ's RFC determination.

29. Plaintiff next argues that the ALJ failed to properly consider Plaintiff's subjective statements regarding her symptoms. (Docket No. 13 at 25). This argument also fails.

30. An ALJ must consider a claimant's subjective complaints, but "is not required to accept [them] without question." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). Here, the ALJ found that "[Plaintiff's] allegations of debilitating symptoms are not wholly consistent with the evidence." (R. at 25). The ALJ's consistency findings are borne out by the record.

31. The ALJ explained that "the treatment notes above do not indicate that [Plaintiff's] impairments are especially limiting" and noted that mental status exams "showed that [Plaintiff] had normal attention and concentration and intact recent and remote memory." Id.

32. Further, the ALJ noted that "although [Plaintiff] alleged that she suffers from ADHD, there is no evidence of treatment for this around the application date or afterwards." Id. Plaintiff's testimony confirms that she is no longer being treated for ADHD. (R. at 506). See Navan v. Astrue, 303 F. App'x 18, 20 (2d Cir. 2008) (affirming the ALJ's finding that "[an individual's] claims of total disability were undermined by his failure to seek regular treatment for this allegedly disabling condition.")

33. Plaintiff testified that she is prevented from working because she has "pain in [her] knees and [her] left hand swells up." (R. at 503). The record does indicate that Plaintiff complained of pain in her knee and hand related to her neurofibromatosis, however Plaintiff denied that these impairments caused functional limitations. (R. at 357, 369, 439). Plaintiff also testified that she cleans, cooks, does laundry, and helps with childcare. (R. at 514-15). When the ALJ asked what would stop her from working full-time, Plaintiff responded, "[n]othing." (R. at 515).

34. As previously discussed, Dr. Burke's mental status exams showed Plaintiff has "good attention, concentration and fund of knowledge" along with the ability to "follow multiple step commands." (R. at 372, 441).

35. The ALJ's consistency finding is supported by the record, and it was reasonable for the ALJ to rely both on the available medical evidence and the lack of evidence when determining Plaintiff's RFC. See Ortiz v. Colvin, 2014 U.S. Dist. LEXIS

105191, *21, 2014 WL 3784108 (W.D.N.Y. 2014) ("Because Plaintiff bears the burden of proving her RFC, the ALJ could reasonably rely on the lack of evidence that Plaintiff was unable to perform a range of sedentary work.")

36. This Court is satisfied that the ALJ did not substitute his lay opinion for those of Plaintiff's doctors, but rather, properly weighed the evidence as a whole when making the RFC determination.

37. For the foregoing reasons, this Court finds that substantial evidence supports the ALJ's determination, which is devoid of legal error. Therefore, remand is not warranted.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 13) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 19) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:   October 1, 2019
         Buffalo, New York

                                              s/William M. Skretny
                                              WILLIAM M. SKRETNY
                                              United States District Judge